**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ALBERT MONTEIRO** | ) | |
| | ) | |
| **VS.** | ) | **C.A. No. 04-00044T** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

**GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE AND/OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Now comes the United States of America, by and through its attorneys, and objects to Defendant's Motion to Vacate, Set Aside and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 for the reasons set forth in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

CRAIG N. MOORE
United States Attorney

DULCE DONOVAN
Assistant U.S. Attorney
50 Kennedy Plaza
8th Floor
Providence, RI 02888
401.528.5477

Dated: May 17, 2004

11

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ALBERT MONTEIRO** | ) | |
| | ) | |
| **VS.** | ) | **C.A. No. 04-00044T** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on this 17th day of May, 2004, I forwarded a copy of the within United States' Objection and Memorandum of Law in Support of Government's Objection to Defendant's Motion to Vacate, Set Aside and/or Correct Sentence Pursuant to 28 U.S.C. § 2255, by postage prepaid mail to:

Alberto Monteiro
Otisville FCI
P.O. Box 600
Otisville, NY 10963

[signature]

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ALBERT MONTEIRO** | ) | |
| | ) | |
| **VS.** | ) | **C.A. No. 04-00044T** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE AND/OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

## I. PROCEDURAL HISTORY

On November 7, 2001, a grand jury indicted Petitioner, Albert Monteiro ("Monteiro") charging that he possessed a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). On November 20, 2001, the government filed a notice of prior offenses in which it signaled its intention to seek the mandatory-minimum sentence of fifteen years imprisonment under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), applicable to § 922(g) offenders with three or more violent felony convictions. On January 11, 2002, Monteiro pled guilty.

On March 29, 2002, this Court imposed a sentence of 165 months imprisonment. Monteiro filed a timely notice of appeal to the United States Court of Appeals for the First Circuit. Monteiro's conviction and sentence were summarily affirmed. See Ex. 1, United States v. Monteiro, No. 02-1408, Judgment Oct. 24,

2002, 181 F.3d 183 (1st Cir. 1999). Monteiro's sentence became final on March 3, 2003, when the Supreme Court issued its Order denying Monteiro's petition for writ of certiorari. On February 13, 2004, Monteiro timely filed this motion pursuant to 28 U.S.C. § 2255.

## II. THE LAW GOVERNING THE ENTITLEMENT TO A HEARING

Section 2255 provides that the Court should hold a hearing unless the motion, the files and records of the case conclusively show that the prisoner is entitled to no relief. Rule 4 of the rules governing § 2255 proceedings for the United States District Courts provides in pertinent part that "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified."

The burden is on the movant to prove by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989). In considering a motion under § 2255, the district court should accept the movant's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988).

The First Circuit has stated that no hearing is required where the § 2255 motion: 1) is inadequate on its face, or 2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989). Moreover, the First Circuit has also held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. United States, 879 F.2d 975, n.8 (1st Cir. 1989). A district judge's personal observation and recollection of the events at trial may supplement the record. Gregory v. United States, 585 F.2d 548, 550 n.1 (1st Cir. 1978); United States v. DiCarlo, 575 F.2d 952, 9540955 (1st Cir. 1978).

In the instant case, no evidentiary hearing is required because all of Monteiro's claims can be resolved by reference to the record. Portions of the record necessary to decide this motion include: 1) a copy of the indictment; 2) copies of the guilty plea and sentencing transcripts; 3) the Presentence Report; and 4) copies of Monteiro's appellate documents.

## III. FACTS

On January 13, 2001, Providence police officers saw Albert Monteiro walking in a parking lot with a gun protruding from his waistband. Presentence Report (PSR) at 2. They stopped him and

recovered from his pants an Intratec TEC DC-9 .9-millimeter semiautomatic pistol. PSR at 2. In his jacket they found a high-capacity magazine containing 27 live .9-millimeter rounds. PSR at 2. At the time of his arrest, Monteiro had prior convictions for burglary, robbery, assault with intent to commit murder, assault with a dangerous weapon, and assault on a correctional officer. PSR at 2-3.

On November 7, 2001, a grand jury returned a one-count indictment charging that Monteiro possessed a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). On November 20, 2001, the government filed a notice of prior offenses in which it signaled its intention to seek the mandatory-minimum sentence of 15 years imprisonment under the ACCA, 18 U.S.C. § 924(e)(1), applicable to § 922(g) offenders with three or more violent felony convictions. On January 11, 2002, Monteiro pled guilty. Ex. 2, Jan. 11, 2002, Guilty Plea Hearing.

The Probation Department concluded that because the ACCA applied, Monteiro's base offense level was 33. PSR at 5. With a three-level reduction for acceptance of responsibility, his total offense level was 30. PSR at 6. He was in Criminal History Category V. PSR at 9. The applicable guideline sentencing range was 180-188 months of imprisonment (180 months is 15 years). PSR at 13.

Monteiro did not dispute that the ACCA applied to him by its own terms in light of his prior record. Nor did he contest the Probation Department's sentencing guideline calculations. Instead, at the time of Sentencing, Monteiro argued that the proposed mandatory-minimum sentence violated two international treaties and the Eighth Amendment. See Defendant's Response and Objections to Presentence Report at 1-5. He also requested a downward departure based on alleged extraordinary family circumstances. Memorandum of Law in Support of Motion for Downward Departure at 1-11.

At the March 29, 2002 sentencing hearing, Monteiro's counsel made no mention of the Eighth Amendment claim, he agreed with the Court's summary of the sentencing issues (a summary that did not refer to this claim), and he stated that there were no other unresolved sentencing issues. Ex. 3, March 29, 2002, Sentencing Hearing at 2-3,17. The Court rejected the treaty claim. Ex. 3 at 11-13. It also concluded that it lacked authority to depart below the mandatory minium sentence of 15 years imprisonment. Ex. 3 at 15-16. It did, however, give Monteiro credit for time that he had served in state prison on related state charges. Ex. 3 at 16-17. Accordingly, the Court imposed a sentence of 165 months imprisonment, to run concurrently with the sentence Monteiro was serving on the state charges. Ex. 3 at 19-20. Monteiro filed a timely notice of appeal.

## IV. ISSUES

On direct appeal Monteiro raised four issues: (1) whether the Court erred in determining that the International Covenant on Civil and Political Rights (ICCPR), the Convention on the Rights of Children(CRC) and/or customary international law was not applicable to sentencing in criminal cases; (2) whether the Court erred in determining that the ICCPR was not applicable to sentencing in a criminal case because the treaty when ratified by Congress provided that it was not self-executing; (3) whether the Court erred in determining that the application of the mandatory minimum sentence was not violative of the Eighth Amendment to the United States Constitution; and (4) whether the Court erred in denying a hearing on Monteiro's Motion for Downward Departure from a Mandatory Minimum Sentence. Monteiro succeeded on none of his appellate issues before the Circuit.

Presently, Monteiro raises four new issues in this § 2255 motion: (1) whether he received ineffective assistance of counsel in that counsel failed to object to Monteiro's arrest and indictment based on the Double Jeopardy Clause; (2) whether he received ineffective assistance of counsel because counsel failed to interview a witness who could have testified that the police officers lied regarding the circumstances surrounding Monteiro's arrest; (3) whether he received ineffective assistance of counsel in that counsel failed to challenge the indictment based on the

fact that the United States did not demonstrate that the firearm named in the indictment affected interstate commerce; and (4) that the police officers who arrested him violated the Fourth Amendment in that they lacked probable cause to search him. For all of the reasons argued below, Monteiro's motion should be denied.

## V. **ARGUMENT**

### A. Background Law - § 2255

Monteiro filed his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 which states in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. A motion under 28 U.S.C. § 2255 is a substitute for habeas corpus. Relief is available under this section only if the same relief is available under the writ. Hill v. United States, 368 U.S. 424, 427 (1962). The grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he has been adjudged guilty. Taylor v. United States, 177 F.2d 194, 195 (4th Cir. 1949). Further, a valid plea of guilty waives all but

jurisdictional defenses. See United States v. Chantal, 902 F.2d 1018, 1020 (1st. Cir. 1990), overruled on other grounds Liteky v. United States, 510, U.S. 540 (1994).

In United States v. Addonizio, 442 U.S. 178, 184-185 (1979), the Supreme Court stated:

> It has, of course long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment ... [U]nless the claim alleges a lack of jurisdictional or constitutional error, the scope of a collateral attack has remained far more limited ... The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice ... Similar limitations apply with respect to claimed errors of fact.

See also Davis v. United States, 417 U.S. 333, 346 (1974). A collateral attack may not do service for an appeal. United States v. Frady, 456 U.S. 152, 165 (1982); Dirring v. United States, 370 F.2d 862, 865 (1st Cir. 1967). A § 2255 motion is required to be filed within one year after entry of final judgment. See United States v. Prescott, 221 F.3d 686, 687 (4th Cir. 2000). If a petitioner seeks certiorari, the one-year clock begins running from the date of which the Supreme Court denied certiorari. Monteiro's motion has been timely filed.

B. Though Timely - Monteiro Has Waived His Right to Challenge the Alleged Errors

Monteiro raised four issues in his direct appeal. All other issues, not raised on direct review, are generally considered to

be waived.

A defaulted claim generally cannot be heard on collateral review unless the applicant shows "cause" for each failure to raise the claim and "actual prejudice" resulting from the error he alleges. See United States v. Frady, 456 U.S. 152, 170 (1982) and United States v. Thompson, 501 U.S. 732, 750 (1991). This standard is more strict than the plain error standard applied on direct appellate review of defaulted claims. Id. at 164-66.

By not raising the issues on appeal they are waived and Monteiro's motion should be denied. Monteiro attempts to cure his default, however, by claiming that he received ineffective assistance of counsel on three of his defaulted issues. Here too his motion should be denied because he has failed to establish that counsel's assistance fell below an objective standard of reasonableness or that he would not have pled guilty but for counsel's ineffectiveness.

C. Monteiro Cannot Sustain A Claim Of Ineffective Assistance Of Counsel

Monteiro's guilty plea does not prohibit him from arguing that his plea was involuntary (and invalid) because his counsel's representation fell below the minimum required by the Sixth Amendment. See Acha v. United States, 910 F.2d 28, 30 (1st Cir. 1990) (per curium). " ' [A] counseled plea must be based on advice which [is] within the range of competence demanded of attorneys in criminal cases.' " Lopez-Nieves v. United States,

917 F.2d 645, 648 (1st Cir. 1990) (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985)). The Supreme Court has established a two-part test to evaluate ineffective assistance claims. Strickland v. Washington, 466 U.S. 668, 667 (1984); Lema v. United States, 987 F.2d 48, 52 (1st Cir. 1993). A party convicted by way of a plea of guilty advancing such a claim has the heavy burden of proving: (1) that his attorney's performance fell below an objective standard of reasonable effectiveness, and (2) "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

To meet this burden, Monteiro must establish that his counsel's performance was not within the wide range of reasonable professional assistance. See Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994). In determining whether counsel's performance fell below the relevant benchmark, "[j]udicial scrutiny of counsel's performance must be highly differential", and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (other citations and internal quotations

omitted). See also, Argencourt v. United States, 78 F.3d 14 (1st Cir. 1996) (setting out the background and standards applicable to ineffective assistance of counsel claims in § 2255 motions).

A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. If a claim of ineffective assistance can be disposed of on the ground of lack of prejudice, the Court should do so. Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984). Monteiro's motion presents such claims - no where in his motion does Monteiro allege that his counsel's alleged deficiencies impacted his decision to plead guilty.

1. Monteiro's Counsel's Failure to Object to the Indictment on Double Jeopardy Grounds was Neither Unreasonable nor Prejudicial

The first issue raised by Monteiro is that his counsel, the same before this Court and on appeal, failed to object to Monteiro's "illegal arrest" and the "invalid indictment" based on the double jeopardy clause. Pet.'s Mot. ¶ 12A. Although not completely spelled out in his motion, presumably Monteiro is upset by his counsel's failure to object to the United States' prosecution of him subsequent to the State of Rhode Island's successful prosecution of him for possession of the same firearm. In order to succeed on his argument, under Strickland, Monteiro must show that counsel's actions fell below an objective standard of reasonableness and, under Hill, that but for his counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial. Monteiro falls short on each burden.

It is axiomatic that "prosecutions undertaken by separate sovereign governments, no matter how similar they may be in character, do not raise the specter of double jeopardy." United States v. Guzman, 85 F.3d 823, 826 (1st Cir. 1996), citing Heath v. Alabama, 474 U.S. 82, 88 (1985). Therefore, Monteiro's counsel had no basis to object to his arrest and indictment on double jeopardy grounds. Any lack of objection was in accordance with the law and was not unreasonable.

Even if Monteiro could show that his counsel did not act reasonably, he must show that there is a reasonable probability that but for his counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59. Even if Monteiro's counsel had raised the double jeopardy issue, because the law is so clear that separate sovereigns may prosecute a defendant for the same or similar crime, his argument would have failed. Thus, nothing counsel did or failed to do would have changed the outcome of the plea on this basis. Indeed, Monteiro fails to allege otherwise. Monteiro's claim is meritless, any error was harmless, and the Court can have confidence in the outcome of the plea and deny his motion.

In addition, on appeal, Monteiro's counsel is not obligated

to assert all non-frivolous issues. "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 403 U.S. 745, 752 (1983). Indeed, "[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence on incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986). In fact, counsel's "failure" to raise a weak constitutional claim may constitute an acceptable strategic decision "to avoid diverting appellate court's attention from what [counsel] felt were stronger claims". Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). So although it is possible to bring a claim based on counsel's failure to raise a particular claim, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000).

On appeal, Monteiro's counsel filed a brief on Monteiro's behalf raising three issues. The fact that appellate counsel did not raise a meritless issue regarding the Double Jeopardy Clause only means that counsel appropriately determined that it served Monteiro's best interest not to raise such an issue. Even if on appeal Monteiro's counsel's performance fell below the standard of effectiveness, Monteiro has failed to show prejudice as

required under the second prong of Strickland because the law is clear and the issue would not have succeeded on appeal. Monteiro's claim in this regard lacks merit, and the Court may, therefore have confidence in the result.

2. Counsel's Failure to Interview a Witness Does Not Constitute Ineffective Assistance of Counsel

Monteiro claims that his counsel was ineffective because he failed to interview an eye-witness named Vivian Lee who could have testified that the police officers "lied in the incident case of their illegal warrantless search and seizure." Pet.'s Mot. ¶ 12B. Notably, Monteiro does not state what evidence Ms. Lee would have provided which would have called into question the officers' version of the events leading to his arrest. Indeed, Monteiro does not contend that Ms. Lee would have provided testimony contradicting the officers' statements that they pulled an Intratec TEC DC-9 millimeter handgun from Mr. Monteiro's waistband, i.e. Monteiro does not claim innocence of the crime to which he pleaded guilty. In any event, the standard under which Monteiro's claim is evaluated is the same as that outlined above - under Strickland, Monteiro must show that counsel's actions fell below an objective standard of reasonableness and, under Hill, that but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Monteiro falls short on each burden.

The decision whether to interview a witness is a tactical decision. See Lema v. United States, 987 F.2d 48, 55 (1st Cir. 1993). "[T]he decision to interview potential witnesses . . . must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of a particular case." Id. A presumption of reasonableness attaches to counsel's tactical decisions like the interviewing of witnesses. Id. at 54-55. In the instant case, it is likely that Monteiro's counsel made a tactical decision regarding the potential value in interviewing Ms. Lee and the efficacy of any testimony she would provide at trial compared with the inherent risks in going to trial combined with Monteiro's loss of three points for acceptance of responsibility given the fact that he was already facing a fifteen-year minimum sentence. Most importantly, and fatal to his claim, Monteiro fails to assert how his counsel's alleged failure to interview this eyewitness impacted his decision to plead guilty. Monteiro does not contend that his counsel's failure to interview Vivian Lee rendered his guilty plea involuntary or that but for his counsel's failure to interview Ms. Lee he would not have pleaded guilty. Thus, Monteiro has failed to even allege, let alone prove, under Hill that but for his counsel's actions he would not have pleaded guilty. Accordingly, Monteiro's claim in this regard lacks merit, and the Court must deny his motion.

3. Monteiro's Counsel Was Not Ineffective in Failing to Challenge the Court's Lack of Authority to Entertain His Prosecution

The third issue raised by Monteiro is that his counsel failed to object to the Court's authority to entertain his prosecution on the ground that the United States failed to establish that the firearm referenced in the indictment was in or affecting commerce. In the event that the Court finds that the United States demonstrated that the firearm at issue was in or affecting interstate commerce, Monteiro maintains that it was error for his counsel not to have objected to his prosecution on the theory that Congress had overstepped its powers under the Commerce Clause by enacting 18 U.S.C. § 922(g).

As discussed above, in order to succeed on his ineffective assistance of counsel claim, under Strickland, Monteiro must show that his counsel's actions fell below an objective standard of reasonableness. In addition, under Hill, Monteiro must demonstrate that but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Again, Monteiro falls short on each burden.

At the plea hearing, the United States noted that one of the elements of the § 922(g) charge to which Monteiro was pleading guilty, was that the firearm was connected with interstate commerce. Ex. 2 at 2-3. Guilty Plea Hearing. In order to illustrate that had the case gone to trial, the United States

would have been able to meet its burden on this element, counsel for the United States stated:

> Had this case proceeded to trial the United States would demonstrate beyond a reasonable doubt. . . . also the Intratec pistol which Mr. Monteiro possessed was manufactured in the State of Florida. There are no gun manufacturing plants in the State of Rhode Island. This demonstrates that the gun he possessed had crossed state lines into the State of Rhode Island.

Ex. 2 at 14. Such facts had they been adduced at trial, would have met the United States' burden under the Commerce Clause. Accordingly, Monteiro's counsel had no basis upon which to object to the United States failing to provide evidence that the firearm came within federal jurisdiction under the Commerce Clause. Moreover, courts have previously rejected Monteiro's contention that § 922(g) is an invalid exercise of Congress' authority under the Commerce Clause. See e.g. United States v. Cardoza, 129 F.3d 6, 10-11 (1st Cir. 1997). Thus, any lack of objection was not unreasonable and was in accordance with the law.

Even if Monteiro could show that his counsel did not act reasonably, he must show that there is a reasonable probability that but for his counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59. Monteiro does not assert that this is the case. Thus, there is nothing to suggest that had Monteiro's counsel raised the Commerce Clause issues it would have changed the outcome of the plea on this basis. Thus, Monteiro's claim is

outcome of the plea on this basis. Thus, Monteiro's claim is meritless, any error was even more harmless, and the Court can have confidence in the outcome of the plea and should deny his motion.[1]

D. It is Too Late for Monteiro to Challenge his Arrest and Search as Being in Violation of the Fourth Amendment

Monteiro's fourth and final argument which he contends entitles him to relief under § 2255 is that the police officers who arrested him violated his Fourth Amendment rights to be free from unlawful search and seizure. Because in pleading guilty Monteiro waived all nonjurisdictional defects that might be raised in a § 2255 motion, it is too late for him to make such a claim. "Because conviction on a guilty plea is based solely on the plea, not on the evidence, there is no point in examining the evidence unless it coerced the plea or made it involuntary." Gioiosa, 684 F.2d at 180. Monteiro has made no such allegation. "[Monteiro] not having alleged that his plea was coerced or made involuntary by the search and seizure of the evidence," the Court must hold that he is precluded from challenging the evidence in his § 2255 motion. Id. at 180. Accordingly, Monteiro's § 2255 motion must be denied.

[1] The same arguments put forth above regarding Monteiro's counsel's obligation on appeal to assert his double jeopardy claims apply to his Commerce Clause arguments.

## VI. CONCLUSION

For all of the foregoing reasons, Monteiro's motion should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

CRAIG N. MOORE
United States Attorney

DULCE DONOVAN
Assistant U.S. Attorney
50 Kennedy Plaza
8th Floor
Providence, RI 02888
401.528.5477

Dated: May 17, 2004

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ALBERT MONTEIRO** | ) | |
| | ) | |
| **VS.** | ) | **C.A. No. 04-00044T** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on this 17th day of May, 2004, I forwarded a copy of the within United States' Memorandum of Law in Support of Government's Objection to Defendant's Motion to Vacate, Set Aside and/or Correct Sentence Pursuant to 28 U.S.C. § 2255, by postage prepaid mail to:

Alberto Monteiro
Otisville FCI
P.O. Box 600
Otisville, NY 10963

[signature]

(1)

# United States Court of Appeals
## For the First Circuit

No. 02-1408

UNITED STATES,
Appellee,

v.

ALBERT MONTEIRO,
Defendant, Appellant.

OCT 28 2002

---

Before

Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

---

JUDGMENT
Entered: October 24, 2002

After a careful review of the record, we summarily affirm the judgment of the district court. Appellant-defendant Albert Monteiro has not demonstrated that international treaties or customary international law apply to prohibit his statutorily mandated sentence under the Armed Career Criminal Act. Furthermore, his Eighth Amendment argument fails because he has not demonstrated that his sentence is grossly disproportionate in light of his prior record and the instant offense. See United States v. Cardoza, 129 F.3d 6, 18-19 (1st Cir. 1997). Finally, he has not demonstrated, and we cannot find, that the district court had the authority to sentence him to a term below the statutorily mandated minimum which the court imposed.

Affirmed.

By the Court:
RICHARD CUSHING DONOVAN
Richard Cushing Donovan, Clerk.

[ cc: Messrs. Donovan, Lockhart and West ]

(2)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * CRIMINAL ACTION
UNITED STATES NO. 01-111T
Government
FRIDAY,
VS. JANUARY 11, 2002

ALBERT MONTEIRO
Defendant
* * * * * * * * * * * * * * Providence, RI

HEARD BEFORE THE HONORABLE ERNEST C. TORRES
CHIEF JUDGE
(PLEA)

A-P-P-E-A-R-A-N-C-E:

For the Government: Dulce Donovan, Esquire
United States Attorney's Office
50 Kennedy Plaza - 8th Floor
Providence, RI 02903

For the Defendant: George J. West, Esquire
1500 Financial Plaza
Providence, RI 02903

Court Reporter: Judith L. Montie

**FRIDAY, JANUARY 11, 2001**

THE COURT: Good morning.

ALL: Good morning, Your Honor.

THE CLERK: The matter before the Court is Criminal Action 01-111, United States of America versus Monteiro.

THE COURT: This case is here for entry of a plea.

Ms. Donovan would you begin by summarizing the nature of the charges, the elements the Government would be required to prove in order to obtain a conviction, the maximum penalties that could be imposed if a guilty plea is accepted and the terms of plea agreement.

MS. DONOVAN: The nature of the case, Mr. Monteiro was charged previously, convicted as a felon in possession of a firearm in 922(g)(1).

Had this case proceeded to trial, the elements the Government would be required to prove to convict Mr. Monteiro are the following: First, that at the time of possession the Defendant had been convicted in a Court of a crime punishable by a term greater than one year; two, that the Defendant knowing possessed a firearm as described in the indictment; three, that the firearm was connected with interstate

commerce.

The maximum penalties are the following: Life in imprisonment with a mandatory minimum of 15 years; a fine of $250,000 or twice the amount of the gain or loss from the offense whichever is greater; a term of supervised release of up to five years and a mandatory special assessment of $100.

In the plea agreement that has been filed with the Court, the Defendant is going to plead guilty a one count indictment charging that the handgun he possessed, Intertect 9 mm semi-automatic pistol. In exchange for the Defendant's plea of guilty, the Government agrees to recommend the lowest term of imprisonment for the offense level as determined by the Court or the United States sentencing guidelines but it is not including probation or a split sentence even if permitted under the guidelines for purpose of determining the offense.

The plea agreement specifies the Government agrees to recommend a two- or three-level reduction in the offense whichever is applicable for acceptance of responsibility under Section 3E1.1 of the guidelines.

The Government is free to recommend any combination of supervised release, fines

and restitution which the Government deems appropriate.

Finally, it specifies to the Defendant that the Court and the Court alone makes the ultimate sentence decision including the application of the guideline and the sentence to be imposed.

The Court is not bound by the Government's recommendation. It is free to impose any sentence up to and including the statutory maximum. The Defendant also understands that if Court's guidelines are different than he expects, he will not be allowed to withdraw his plea of guilty.

THE COURT: Mr. West, do you agree that Ms. Donovan has accurately summarized the nature of the charge, the elements that the Government would be required to prove, the penalty that could be imposed and the terms of the plea agreement?

MR. WEST: She has, Your Honor.

THE COURT: All right. Mr. Monteiro, would you stand up. Ask the Clerk to administer the oath.

**ALBERT D. MONTEIRO, SWORN**

THE WITNESS: I do.

THE CLERK: State your name and spell your last name.

DEFENDANT MONTEIRO: Albert D. Monteiro, date of birth, 7-22-67, M-O-N-T-E-I-R-O.

**EXAMINATION BY THE COURT**

Q Do you understand that you are now under oath?

A I do.

Q How old are you?

A Thirty-four years old.

Q What's the last grade of school that you completed?

A I completed my high school, GED and did a year of college.

Q Do you have any difficulty in reading or understanding English?

A No.

Q Have you ever been treated for mental illness, any addiction to drug or alcohol?

A No, I haven't.

Q Your attorney Mr. West has supplied a statement saying you are now taking a medication called Ventalin which you spray twice a day or as needed, is that correct?

A Yes.

Q Is that a prescription medication?

A Yeah, since I was a kid.

Q Does a doctor have to prescribe it?
A Doctor prescribed Ventalin, 17 milligrams.
Q Are you taking any other medication besides that?
A No, I am not.
Q Does that medication affect your ability to think clearly or understand things?
A No, it doesn't.
Q And Mr. West stated that he talked to your physician and the physician says that --
MR. WEST: Your Honor, I want to inform the Court that's a prison issued prescription. We were not able to speak with any physician specifically about that prior to this hearing.
THE COURT: What efforts have you made to get a statement from the medical people at the Wyatt?
MR. WEST: He is at the ACI, Your Honor, medium two.
THE COURT: How long has he been in custody, Mr. Monteiro?
MR. WEST: Since January 13 of 2001.
BY THE COURT:
Q Did you have a doctor treat you for this condition before you were arrested?

A Yes, sir, I did. I went to see, upon my release, upon any last sentence.

Q Was it a local doctor?

A Doctor Block, the community, like in the Community Center, like.

Q Where is he located?

A Cranston Street, Your Honor.

Q But you don't believe this spray has any affect on your ability to think clearly or understand things?

A No, it doesn't.

THE COURT: Mr. West, one thing, will you make an effort to contact Doctor Block?

MR. WEST: I will do so, Your Honor.

BY THE COURT:

Q During the last 24 hours, Mr. Monteiro, have you consumed any alcoholic beverages or drugs or medication of any kind other than this spray Ventalin?

A No, I haven't.

Q Are you able to think clearly and understand what's going on here this morning?

A Yes, sir.

Q Have you seen a copy of the indictment that contains the charges against you in this case?

A Yes, I have looked at it, Your Honor.

Q Have you read it and discussed it with Mr. West?

A Yes, I have.

Q Did Mr. West explain exactly what it is you have been charged with and the things the Government would have to prove in order to convict you of that charge?

A Yes.

Q Did you hear Ms. Donovan also explain those things?

A Yes.

Q Do you understand the nature of the charge and the things the Government would have to prove in order to convict you?

A Yes, I do.

Q Are you completely satisfied with the representation that Mr. West has provided as your attorney in this case?

A Yes, I have, Your Honor.

Q Now, the Court has been supplied with a document that's labeled "Plea Agreement". It is five pages long. It appears to have your signature on the last page. Did you sign that document, Mr. Monteiro?

A Yes, I have.

Q Before you signed it, did you read and

discuss it with Mr. West?

A Yes, I have.

Q Did he explain to you what the document says and what the significance of signing it is?

A Yes, he has done.

Q Do you understand what that document says?

A Yes, I do.

Q Does that document accurately describe your agreement with the Government?

A It does.

Q Does it leave out anything that you think is part of the agreement?

A No, it doesn't, Your Honor.

Q Has anybody made any promises to you other than the promises contained in that document that have caused you to decide to plead guilty in this case?

A No.

Q Has anybody made any threats of any kind against you that have caused you to decide to pled guilty?

A No, they haven't.

Q Is it fair to say then that you make this decision voluntarily because you think it is in your best interest?

A Yes.

Q Do you understand, Mr. Monteiro, that -- first of all, has Mr. West discussed the Federal sentencing guidelines?

A He has, Your Honor.

Q Has he given you any kind of estimate as to what sentence he thinks you are likely to receive in this case?

A In a roundabout way, yes.

Q Do you understand neither Mr. West or anybody else can tell you what sentence you are likely to receive. The Court alone makes that decision and the Court can't make that decision until it has all of the facts which will be contained in the presentence report, do you understand that?

A Yes, I do.

Q Do you also understand this agreement you have with the Government, that the Court is not a party to that agreement. Although the Government has to keep whatever promise it made to you, it has to recommend the sentence they promise they would recommend, the Court doesn't have to accept that recommendation. The Court makes an independent decision as to what your sentence should be based upon the facts presented, do you understand that?

A Yes, I do.

Q Did you hear Ms. Donovan say a while ago if your guilty plea is accepted, you could receive a sentence of anywhere between 15 years and life; there is a minimum sentence of 15 years and a maximum of life, followed by up to five years of supervised release, a fine of up to $250,000 and a special assessment of at least $100, do you understand that?

A That I understand.

Q Do you understand, that you could receive that sentence?

A Yes, I do.

Q Do you also understand that you are not required to plead guilty in this case. You have a right to plead not guilty and to have a trial before a Jury if you wish at which the Government would be required to prove you guilty beyond a reasonable doubt?

A I do, Your Honor.

Q Do you understand if your guilty plea is accepted, you can't later change your mind and withdraw the plea unless the Court allows you to do that?

A Yes, I do.

Q Do you understand also that by pleading guilty you would be giving up a number of rights other

than besides the right to a Jury trial?

A Yes, I do.

Q Do you remember reading in the plea agreement at pages two and three what all those rights are?

A Yes.

Q And did Mr. West explain those rights to you?

A He has done that. Yes, he has done that.

Q And do you understand what all those rights are?

A Yes, I do.

Q I am going to go over all of them to make sure you understand. You can exercise your right to plead not guilty and to have a trial and if a Jury finds you guilty, you get sentenced, you would have the right to appeal both the finding of guilty and the sentence. You can claim that the Jury make a mistake. If you plead guilty, you may or may not have a right to appeal your sentence, depending on the situation but you would not be able to appeal claiming you are not guilty because you have admitted your guilt, do you understand the difference between those two things?

A Yes, I do, Your Honor.

Q Do you also understand if you chose to have a trial, plead not guilty, you would have the right to be represented by an attorney at the trial. If you could not afford an attorney, the Court would appoint one to represent you without any charge to you. You would have the right to question through your attorney or question or cross-examination any witnesses that the Government might present to testify against you. You would have the right to require the attendance of any witnesses you think might testify in your favor?

A I understand that, Your Honor.

THE COURT: You may be seated, Mr. Monteiro.

I'll ask Ms. Donovan to briefly summarize the facts that she says the Government would be able to prove if this case went to trial. You should listen because when she finishes I'm going to ask you whether you agree that all those things are true and the Government would be able to prove them?

MS. DONOVAN: Your Honor, had this case proceeded to trial, the United States would demonstrate the following beyond a reasonable doubt: That on January 13, 2001, two officers from the Providence Police Department observed Mr. Monteiro walking in the parking lot of Lockwood Place, a

development in Providence. Mr. Monteiro caught the officers' attention with a large bulging, protruding object in his front waistband, illuminating Mr. Monteiro with alley light and from the squad car. Both officers were able to determine that in fact the object that was protruding was a gun. The officers approached Mr. Monteiro, arrested him. After they placed handcuffs on him, they seized the Intertect C9 semi-automatic pistol from his pants and also a high capacity magazine containing 27 live rounds in his jacket. Mr. Monteiro had previously been convicted of a crime punishable by a term exceeding one year. Also the pistol which Mr. Monteiro possessed was manufactured in the State of Florida. There are no gun manufacturing plants in the State of Rhode Island. This demonstrates that the gun he possessed had crossed state lines into the State of Rhode Island.

THE COURT: Mr. Monteiro, would you stand up.

**BY THE COURT:**

Q Did you hear everything that Ms. Donovan said?

A Yes, I did.

Q Do you agree those things are true and if this case went to trial, the Government would be able

to prove them?

A Yes, sir.

THE COURT: All right.

Q After hearing everything that you have been told, Mr. Monteiro, about the charge and the things the Government would have to prove in order to convict you, the maximum penalties that could be imposed, the rights you are giving up by pleading guilty, do you still wish to plead guilty to this charge?

A Yes, I do, Your Honor.

THE COURT: You may be seated, Mr. Monteiro.

The Court finds that the Defendant is fully competent; he understands the charge and the elements that the Government would have to prove; he also understands the maximum penalties that could be imposed. The Court also finds that his plea is voluntary and he is making it of his own free will and there is a factual basis for the plea as represented by the Government's proffer. Therefore, the Court accepts the plea of guilty and hereby adjudges the Defendant guilty.

Sentencing is scheduled for March 29 at ten-thirty a.m.

Some time before that, Mr.

Monteiro, perhaps day, someone from the Probation Department will want to talk with you to gather facts for the presentence report which would be supplied to the Court. You can have Mr. West there when the interview takes place to advise you and when the report is completed, you have a right to examine it. If you think it is incorrect in any way, you have the right to object to that part that you think is incorrect. If you object, the Court will decide whether it is correct or not and give you a chance to present any evidence that you have to support your position. If you do wish to object to the report, you should know that your objection has to be submitted in writing within 14 days after the date on which the report is first made available for you to review. It is not 14 days from the date you actual review it or get around to talking to Mr. West about it, it is 14 days from the day it was available for to you review if you want to. If you do not object within that time, you will be considered to have forfeited your right to object and Court will treat whatever is in report as being accurate. In other words, if you don't object within the 14 days, it will be too late to challenge the report, do you understand what I am saying?

DEFENDANT MONTEIRO: Yes, I do, Your Honor.

THE COURT: Also on the day set for sentencing, you have the right to address the Court and say anything you think should be considered in determining your sentence. Mr. West will have a chance to speak on your behalf also. You are not required to say anything but if you wish to say something, you will be given a chance. If you prefer to let Mr. West do all of the talking, that decision is up to you.

Do you have anything further, Ms. Donovan?

MS. DONOVAN: No, Your Honor.

THE COURT: Mr. West?

MR. WEST: No, Your Honor.

THE COURT: The Court will be in recess.

(RECESS)

(3)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * CRIMINAL ACTION
UNITED STATES OF AMERICA * NO. 00-111T
Government *
* FRIDAY,
VS. * MARCH 29, 2002
*
ALBERT MONTEIRO *
Defendant *
* * * * * * * * * * * * * * Providence, RI

HEARD BEFORE THE HONORABLE ERNEST C. TORRES
CHIEF JUDGE
(SENTENCING)

**A-P-P-E-A-R-A-N-C-E:**

For the Government: Dulce Donovan, Esquire
United States Attorney's Office
50 Kennedy Plaza - 8th Floor
Providence, RI 02903

For the Defendant: George J. West, Esquire
1500 Financial Plaza
Providence, RI 02903

Court Reporter: Judith L. Montie
203 Federal Courthouse
1 Exchange Terrace
Providence, RI 02903

THE COURT: Good morning.

ALL: Good morning, Your Honor.

THE CLERK: The matter before the Court is Criminal Number 01-111, United States of America versus Monteiro.

THE COURT: This case is here for sentencing, Mr. Monteiro having previously pled guilty to a charge possessing a firearm after having been convicted of a felony.

Mr. West and Mr. Monteiro, have you both had a opportunity to read and discuss the presentence report?

MR. WEST: Yes, Your Honor, I have and I have discussed it with Mr. Monteiro.

THE COURT: Mr. Monteiro?

THE WITNESS: That's right.

THE COURT: Now, Mr. West, you had raised several matters here. First, I believe you had an objection not really to the facts recited in the presentence report but you had made a claim that there was a treaty that limited the sentence that could be imposed on your client. You have a motion for a downward departure. And you have a motion that any sentence to be imposed be made to run concurrently with the sentence that Mr. Monteiro is presently serving on

the State Court, is that right?

MR. WEST: That's right, Your Honor.

THE COURT: And the Government has no objections to the presentence report, Ms. Donovan, is that right?

MS. DONOVAN: That is correct, Your Honor.

THE COURT: Are you pressing your treaty argument, Mr. West?

MR. WEST: I would like to, Your Honor, if it please the Court.

Your Honor, before I begin, I have received from Mr. Monteiro an additional letter of support which I would like to offer to the Court before I forget to do so in these proceedings.

THE COURT: I am glad you mentioned that because I forgot to state that the Court has received some letters on behalf of Mr. Monteiro, two letters, one from a Linda Klecak and one from a Doreen Davis. I assume you have seen those, Ms. Donovan?

MS. DONOVAN: I have.

THE COURT: Do you have the third letter there? Have you provided Ms. Donovan with a copy?

MR. WEST: I have shown it to her this morning. She has read it as well as the Probation

Officer.

THE COURT: Ask the Clerk to mark these three letters and append them to the presentence report.

All right. Mr. West.

MR. WEST: Your Honor, the defense has supplied the Court with the case of *Beharry* versus versus *Reno, a* United States District Court for the Eastern District of New York decision authored by Judge Weinstein. It frames the issue very nicely in terms of what we are arguing today. In that case, the Court was confronted with mandatory deportation; however, interlaced in that case is the recognition that such a penalty is nominally equivalent to a criminal penalty imposed in the criminal Courts. The distinction between the two was very difficult for Judge Weinstein to find and I think that recognition allows me to argue here that where he found that the equivalent of a criminal penalty, meaning the deportation for life from the United States, required a hearing prior to being imposed as it being in violation of several treaties in the Customary International Law.

The same is true here because what is to happen here is the mandatory imposition of a 15 year minimum sentence by this Court and in my view, that is particularly equivalent to what happened in *Beharry*,

because at issue in *Beharry* was the separation of that gentleman from his family and his children, citizen and resident alien. At issue here will be the separation of Mr. Monteiro from his eight month old child for a period of 15 years. And due to the extraordinary youth of that child, being separated from the child for 15 years during its whole period of being raised and being formed, essentially is going to forever distance him from that child, and remove from that child whatever influence he could have in a good way to raising the child.

THE COURT: Does that mean, Mr. West, that Courts should have separate standards and sentences for individuals who have children and those that do not?

MR. WEST: I think that that's what Judge Weinstein said in *Beharry*. I think he said that exact thing. He said in this instance, the dictates of International Law require a hearing prior to mandatory deportation. I think in the instance where this Court is confronted with an extraordinary minor child, much like you would do if the mandatory minimum was not there, you would have a hearing and hear possible departure argument on those grounds even though that argument might be considered discouraged by the guidelines. But I think by -- so that answers the

question to the best of my knowledge, Your Honor, that that's what Judge Weinstein said in *Beharry*. He found that in that instance, the law required it and I am arguing that this Court should adopt the same principle as it considers imposition of the mandatory minimum sentence.

The Court in *Beharry* recognized that most criminal and civil penalties do not deter drug or other crimes and I think we could argue here that the mandatory minimum penalty of 15 years that's imposed in these cases is not deterring other crimes. It is an arbitrary imposition of penalty irrespective of who comes up with it. If you meet the standard, if you meet the criminal history background, you get the penalty irrespective of your personal circumstances, irrespective of the affects it may have on your child, on your family, you get the penalty under this law. I am here to suggest to that Court that that violates the principles of International Law, Your Honor, that are more fully set out in *Beharry* and other cases.

If I digress a moment the youth at issue lives with Leilani Grandy who is Mr. Monteiro's partner and she is 30 years old and has three other children, Your Honor, ranging in age from 12 to five. The child at issue is ten months old that was born of

the Defendant and Leilani Grandy. She has no support from any other male partner and relies at this time on AFDC benefits to support the children. Her 12 year old's father was killed in a shooting this year in New York City. Her remaining children's fathers provide no support although they are being pursued but apparently completely unemployed. So that she receives seven hundred and fourteen dollars a month into her home. Her rent is five hundred dollars and with the remaining two hundred fourteen she is to pay all bills.

THE COURT: Was Mr. Monteiro residing with this children there?

MR. WEST: Your Honor, the child was born after his incarceration. They had plans and I would offer as proof, an offer of proof, that I could show that they have plans to get an apartment together. She did go ahead and get that apartment and he was subsequently arrested shortly thereafter or simultaneously with that. So that's the background. That's the reality of what's left behind in the wake of this sentence, Your Honor.

Ms. Grandy is able to work; however, she cannot afford day care at this time and she is unable to work at this time because of an injury to her wrist which she is waiting to heal. When she is able to

work, she will be able to have the assistance of her mother. Of course she will only make a minimum wage. So the children in question and specifically Dion would be left without any male figure in their lives due to Mr. Monteiro's incarceration, in his life I should say.

Your Honor, the treaty in International Law it says overrides statutes by virtue of the Constitution. It becomes the law of the land. The Government has pointed out and we understand that the treaty that was cited, the international -- give me a moment, Your Honor. I will give you the correct name. The Convention on Rights of Children as, I am sorry, Your Honor. The International Covenant on Civil and Political Rights, the ICCPR. We understand that that has been held to be none self-executing by Congress introducing a RUD to that treaty; however, the Court in *Beharry* notes that that does not end the inquiry or the relevance of that treaty as it affects the application of American law in the Courts. The Courts have looked to those treaties and have still found them important in interpreting and applying American law as being a statement of the basic law that is accepted by countries around the world.

THE COURT: Is there any suggestion in that treaty, Mr. West, that it was intended to apply to

sentencing in criminal case.

MR. WEST: Not that I know of, Your Honor, but I think it is hard to overlook that when you have a law, as you did in *Beharry*, that requires deportation that is going to affect a human life for the rest of its duration and that it offends the treaty because it is done so without a hearing, that that's what in principle seems to me the same thing as what happens with application of a mandatory minimum sentence and that's what I am here to argue. I think just because it is a criminal law or a deportation law, as Judge Weinstein notes, they have the same effect. Call them one or the other. It is just as Draconian; it is just as arbitrary and it is going to have just as much affect on a human life in either regard.

THE COURT: You have submitted a memo on this question, Mr. West --

MR. WEST: I have, Your Honor.

MS. DONOVAN: And Ms. Donovan has submitted a memorandum, is there anything you feel compelled to add to what's in your memorandum?

MR. WEST: My memorandum cites you to the case that I am relying on heavily in this matter which has the principles that I've laid out here, generally and I would rely on that memorandum in full. As wel as,

and I would just note for the Court's reference that I did argue *United States* versus *Koon* in parallel with this, this argument but also I am separately relying on *Koon* as well.

THE COURT: What's your *Koon* argument?

MR. WEST: I have that in my motion for a downward departure.

THE COURT: That's what I thought so we'll deal with that when we get to the downward departure.

Right now, we are addressing the question of whether or not the treaty has any application and if so, what, what the Court should do about it. Your argument is the Court should conduct a separate hearing to determine the impact on Mr. Monteiro's child that sentencing would have, is that correct?

MR. WEST: That is correct.

THE COURT: At that hearing, what would you consider the Court do?

MR. WEST: I think the Court should consider -- the Court might of its own initiative say to itself, it is going to have an extraordinary affect on the child left behind in the wake of the sentence and the Court may chose not to apply the mandatory minimum.

THE COURT: Your argument then is the Court should take that into account in determining whether to impose a sentence that is less than the statute minimum?

MR. WEST: That is correct, Your Honor.

THE COURT: All right. Ms. Donovan, what do you have to say on that point?

MS. DONOVAN: I don't have anything to add unless the Court has any questions other than what we have articulated in our memorandum and I would ask to rely on that unless again the Court has questions about some of issues that Mr. West has raised that were not fully addressed in our sentencing memo.

THE COURT: I think while your argument is very innovative and creative, Mr. West, I think it rests on a flawed premise and overlooks the fact that the Government has brought out in its memorandum. The flawed premise is that I don't believe that the treaty was intended to be or is applicable to sentencings in criminal cases. And the thing that it overlooks is, as the Government has pointed out, the proviso by Congress when the treaty was ratified is that it not be self-executing so for both of those reasons, the Court finds that the treaty is not applicable here.

Now, you also have an argument for

downward departure. In light of the mandatory minimum, do you wish to press your argument for downward departure?

MR. WEST: Could I just ask, you ruled on ICCRP prevailing, I also argued the Child's Convention that was not signed by the United States and I argue that as Customary Law. Is the Court also ruling that the arguments that I made for the same reason under International Customary Law do not apply in this case?

THE COURT: How would that override the statute? The statutes are trumped only by Constitutional provisions or treaties.

MR. WEST: Well, Your Honor, in *Beharry* the Justice found that the principles of International Law do come into play and have the same importance as the domestic law.

THE COURT: What are the international ramification of this case? Judge Weinstein, even if the Court agreed with him, was dealing with immigration which arguably could implication questions of International Law but how is International Law implicated in this case?

MR. WEST: Let me take an extreme case, Your Honor.

THE COURT: Let's take this case.

MR. WEST: I was going to cite the death penalty as an example. It forms a distinct problem between nations and it is in play right now in the argument between Moussaoui and the French Government giving evidence to the United States because they don't have the death penalty and Europeans think it somewhat barbaric that this country still has the death penalty. So that's an extreme example.

Narrowing into our focus, here it continues a practice of imposing arbitrary penalties by the United States on criminal Defendants regardless of whether it affects their families, their children or whatever else and that is the point I am trying to make. I think it sets us up in a bad light as a superpower for policy reasons which Judge Weinstein also addresses in this decision.

THE COURT: All right. The Court rejects the argument that International Custom would override the statute in this case.

Now, did you wish to press your downward departure argument in light of the fact that there is a mandatory minimum?

MR. WEST: Well, I do, Your Honor, and I do for this reason. May I stand here?

THE COURT: Yes.

MR. WEST: I do not see the *Koon* case as specifically stating that -- the *Koon* case is a huge statement by the Supreme Court on the sentencing power of the District Court. It makes all kinds of reference to the statute that set up the sentencing discretion of this Court and it provides a clear road map for all of the considerations that this Court can take into account. Irrespective of the United States sentencing guidelines or more to the point complementary thereof but I think it also points out the broad sentencing discretion of the Court and it doesn't say that you can't go below a statute minimum when those discretionary items are implicated in any particular case. I'll narrow my argument to that specific point, Your Honor, that's what I think is left open by the *Koon* case.

THE COURT: Well, the *Koon* case may not address that, Mr. West, but the Doctrine of Separation of Powers would certainly address that, wouldn't it? Are you suggesting that this Court has the authority to override a statute enacted by Congress? The Court can declare a statute unconstitutional but are you suggesting that the Court has discretion to impose a sentence other than the sentence that Congress has specifically provided for?

MR. WEST: Well, I think that sentencing has ordinarily been the province of the Court and it is only in the latter days that mandatory sentences have been required of Federal Court in the sentencing reform acts. So I am not prepared, as I stand here today, to address the full issue of separation of powers between the two branches of Government but I do think the *Koon* restates and reclaims to the Federal Court their ordinary and distinct province of passing judgment and imposing sentences and I think those things have not yet been reconciled in the Supreme Court as they might be affected by the mandatory minimums.

THE COURT: Ms. Donovan, do you have anything to say on this question

MS. DONOVAN: Again, Your Honor, unless the Court has any questions, we rely on the arguments in our sentencing memorandum.

THE COURT: Was that in your memorandum?

MS. DONOVAN: The response to the motion for downward departure it was, yes.

THE COURT: Again, Mr. West, it seems like an open and shut case to me. *Koon* does stand for the proposition that the District Court has broad discretion in determining sentence and in departing from the guideline range established by the sentencing

commission but there no suggestion in *Koon*, that the Court also has discretion to override a statute enacted by Congress. Given the fact there is a mandatory minimum sentence, I don't think the Court has any power to impose a lesser sentence.

Your motion for downward departure is denied.

Now, your third request was to make the sentence concurrent with the sentence Mr. Monteiro is presently serving in the State Court. Is there any dispute about that, Ms. Donovan, that the sentence should be concurrent to the State sentence and that Mr. Monteiro should get credit for whatever time he has served in State custody up to this point?

MS. DONOVAN: No, we don't dispute that.

THE COURT: How long has Mr. Monteiro been in custody on the state charge?

MS. DONOVAN: I believe since he arrested on December 13th, 2001.

MR. WEST: As stated in the presentence report, we agree with that, Your Honor, January 13, 2001.

THE COURT: Has anybody done the arithmetic as how many months or days have elapsed. I guess I could do it.

MR. WEST: I would offer 14 months, Your Honor.

THE COURT: It is more than 14. It is 14 months plus.

MR. WEST: Plus, yes.

THE COURT: Fourteen months and 29 days.

MR. WEST: We are at January 13th.

THE COURT: Call it 15 months just to be on the safe side. All right. Do you have anything, any other legal issues to be resolved, Mr. West?

MR. WEST: No, Your Honor. May I have a moment.

THE COURT: Yes.

(CONFERRING WITH CLIENT)

MR. WEST: Thank you, Your Honor.

THE COURT: All right. Mr. Monteiro, at this time, you have the right to address the Court and say anything you think should be considered in determining your sentence, is there anything you would like to say?

THE WITNESS: Stand up?

I 'd only like to say that I made a terrible blunder in my situation out there. I did try to the best I can after getting out after 15 years of serving the State time. I had no intention of doing

anything but to protect myself, no crimes, drugs, none of that. 15 years is kind of steep, even if it was more, I have got to take the responsibility for that. But I would just like to stress, you know, I feel better stressing to the Court that I feel that it is kind of harsh, you know, that I have to go through it again.

And have a -- this if the first time I have a son. It's my first son. After all that time and I was just hoping that some day I would be able to do that with my son, do things with my son that never was done with me. But, again, I just want to apologize for the mistake I made. That's it. I don't have nothing else to say.

THE COURT: All right. Mr. West.

MR. WEST: Your Honor, please, we have argued some facts about Mr. Monteiro that I think it is important for you to consider as you consider this sentence. Mr. Monteiro suffered in his childhood from the loss of his mother at age 36 due to complications of her medical condition and he sustained a childhood which was filled with physical abuse. His mother was a parent user of cocaine and heroin.

THE COURT: Mr. West, if you are telling me this because you have some concern that the Court is going to go above the statutory minimum, I can tell you

right now that I am not.

MR. WEST: That's my concern, Your Honor. I'll sit down. I have nothing to add beyond my papers.

THE COURT: Ms. Donovan, do you have anything to say?

MS. DONOVAN: No, Your Honor. Our recommendation will be the mandatory minimum in accordance with the plea agreement.

THE COURT: Mr. Monteiro, would you stand up while the Court imposes sentence. I don't like mandatory minimums any more than anybody else does. And you are exactly correct. It is a pretty steep sentence for the offense and the reason it is so steep is as you probably know your prior history has caught up with you on this.

There is really no suspense here, Mr. Monteiro, I think the 15 year mandatory minimum is what the Court has to impose. I am certainly not going to go above that. I think that's more than sufficient for what you have done and I will give you credit for the 15 months that you have spent in State custody on basically the same offense.

So I hereby commit you to the custody of the Bureau of Prisons for period of 165 months; that sentence to be served concurrently with the

balance of your State sentence.

Following completion of your sentence, I placed you on supervised release for a period of four years. And I am not going to impose any fine because it doesn't appear that you have any assets with which to pay a fine. I am required to impose a special assessment in the amount of one hundred dollars. You may be seated, Mr. Monteiro.

Do you have anything further, Ms. Donovan?

MS. DONOVAN: No, Your Honor.

THE COURT: Mr. West?

MR. WEST: I know Mr. Monteiro has the right to appeal from this sentence should he choose to do so if the Court may want to put that on the record.

THE COURT: Yes, I am glad -- I was almost going to tell him that he didn't and I had forgotten for a moment that you raised the treaty question.

You have a right to appeal your sentence, Mr. Monteiro, because your counsel has raised a question about whether or not the mandatory minimum applies in your case. Have you made a decision as to whether you would like to appeal?

MR. WEST: We haven't had an opportunity

to discuss that at length, Your Honor, but we will do so, though.

THE COURT: If you do wish to appeal, Mr. Monteiro, first of all, the Clerk is going to supply you and Mr. West each with a letter. Your letter basically will say that you have talked to Mr. West and after talking with him you have decided you do wish to take an appeal. If that's your decision, all you have to do is sign that letter and drop it in the mail so the Court will know that you have told Mr. West that you want to appeal. Mr. West's letter will say that he has talked with you and you have told him that you do not wish to take an appeal. If that's your decision, then all Mr. West needs to do is sign that letter and drop it in the mail so the Court will know that you decided not to appeal.

If you do wish to take an appeal, you need to tell Mr. West and your notice of appeal has to be filed within ten days. If you don't file a notice of appeal within the ten day period, you run the risk that you may forfeit your right to appeal. And, Mr. West, as you know, if Mr. Monteiro tells you he wishes to appeal, it will be your obligation to take whatever steps are necessary to preserve his right to appeal including filing a notice of appeal on his behalf unless

and until the Court of Appeals should appoint someone to represent him.

MR. WEST: I am aware of that, Your Honor, thank you.

THE COURT: Do you have anything further, Ms. Donovan?

MS. DONOVAN: No, Your Honor.

THE COURT: Mr. West?

MR. WEST: Nothing further.

THE COURT: The Court will be in recess.

(RECESS)